IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
COOKEVILLE DIVISION

| | |
|---|---|
| KRISTEN DEITER, | ) |
|    Plaintiff, | ) ) ) |
| v. | ) Case No. |
| TENNESSEE TECHNOLOGICAL UNIVERSITY, | ) ) JURY DEMAND ) ) |
|    Defendant. | ) ) |

## COMPLAINT

The Plaintiff, Kristen Deiter, sues the Defendant, Tennessee Technological University, and for cause of action states:

### JURISDICTION AND VENUE

1. This is an action to recover for unlawful discrimination against the Plaintiff on the basis of her sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq*, and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 *et seq* ("THRA").

2. This Court has jurisdiction over the Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over the Plaintiff's state law claim pursuant to 28 U.S.C. § 1367.

3. The claims asserted in this action arose in Putnam County, Tennessee. Venue in this Court is proper pursuant to 28 U.S.C. § 1391 and Title VII's choice of venue provision, 42 U.S.C. § 2000e-5(f)(3).

4. The Plaintiff is a tenured Associate Professor of English at Tennessee Technological University ("TTU") in Cookeville, Tennessee. The Plaintiff is a woman. The

Plaintiff began working at TTU in 2011 and teaches courses on British Literature and critical theory. The Plaintiff attained tenure in 2017.

5. The Defendant TTU is a public research university and a state-operated education institution with its principal place of business in Cookeville, Putnam County, Tennessee. TTU receives federal funding. TTU employs more than 500 individuals. TTU is an "employer" as defined by 42 U.S.C. §2000e(b).

**FACTS**

6. During the fall of 2020, the Plaintiff applied for promotion to Professor. The Plaintiff submitted a dossier in support of her application. Included in the dossier were details of her teaching, scholarly, and service activities. In particular, the Plaintiff's dossier detailed the research she had published since her last promotion, which included peer-reviewed articles published in two international journals: *The Seventeenth Century* and *Symbolism*. The Plaintiff had also published a book review in *Comparative Drama*. In addition to these publications, the Plaintiff presented three papers at international conferences in the United Kingdom as well as a fourth paper at the University of Virginia's College at Wise Medieval-Renaissance Conference, and she won a grant-funded fellowship. Three other papers by the Plaintiff were accepted for presentation in 2020, but the conferences were cancelled due to the COVID-19 pandemic. In April 2020, the Plaintiff was a recipient of TTU's university-wide Scholar-Mentor Award, an award that honors a faculty member who displays outstanding accomplishments in mentoring, scholarship, research, and teaching.

7. The Plaintiff was qualified for the promotion to Professor.

8. The Plaintiff's application for promotion was reviewed by her peers in the English department, and she received an overwhelming majority in favor of her promotion: six of the eight evaluators voted to recommend her promotion.

9. The English department had a pre-2015 promotion policy which, based on departmental policy, applied to the Plaintiff. Under that policy:

> The English Department expects all candidates to pursue scholarly activity (i.e., research or creative work) beyond the classroom, but recognizes that these activities are diverse in form and purpose…. Promotion to associate or full professor does require a record of scholarly accomplishment. Evaluation depends more on quality than quantity of activities, and on the overall contribution the candidate makes in his or her chosen discipline(s).
>
> ***
>
> Evaluation of the candidate's scholarly activity should stress the quality of the scholarship documented, and should be based on the professional judgment of peers in the discipline. Documentation of scholarly activities should manifest ability in the candidate's discipline. Some methods of documenting this evaluation include, but are not limited to, publication of articles in refereed journals, publication of books by recognized presses, proprietary research, production of referred artistic works, presentation of refereed papers at professional meetings, obtaining competitive grants from professional agencies, or similar recognition of accomplishment.

10. According to the English department's pre-2015 publication standard, promotion to professor required the equivalent of at least one article accepted in a refereed journal since the previous promotion. Any stronger standard was to appear in a departmental document approved by the peers, chair, and dean, and applied equally to all applicants for promotion.

11. The Plaintiff met and exceeded the publication requirements of the English department for the Plaintiff's promotion to Professor.

12. Dr. Josephine McQuail, the Plaintiff's promotion review committee chair, sent an email to Dr. Linda Null, the Plaintiff's department chair, in which Dr. McQuail referenced the

departmental promotion policy and wrote the Plaintiff "published far more than that. Her articles were in world-class, highly respected journals."

13. Dr. Null and the Dean of the College of Arts and Sciences, Dr. Paul Semmes, reviewed the Plaintiff's application, affirmed her unit peers' evaluation, and recommended her for the promotion to Professor.

14. The Plaintiff's application was submitted to the Provost and Vice President for Academic Affairs for TTU, Dr. Lori Mann Bruce, for review on or about May 20, 2021.

15. TTU's policy and procedures were clear that the Provost was responsible for reviewing the evaluations and recommendations of the Plaintiff's peers, chair, and dean. The Provost had the authority to reject those recommendations, but in such instances, TTU policy required the Provost to clearly explain the overriding reasons for rejecting the prior recommendations.

16. TTU Policy No. 206, Faculty Promotion, stated:

> "Because individual priorities, workloads, the level and quality of support services and facilities, disciplinary characteristics, and faculty capabilities and interests are all subject to wide variation within Tennessee Tech, an effective system for evaluating potential or performance must be based upon the professional judgment of the faculty members in the candidate's academic department/unit."

\*\*\*

> "The departmental/unit peers have the primary responsibility for evaluating the quality of faculty performance relative to appointment to or promotion in academic rank."

17. TTU's Provost Guidelines of the Promotion Procedures and Forms in the Faculty Handbook stated:

> "If the Vice President for Academic Affairs disagrees with the recommendation as expressed in the vote of the unit peers, he/she shall write a letter to the unit peers explaining the reason(s) for his/her disagreement. He/she shall also forward a copy of the letter to the candidate for promotion, to the unit chairperson, to the

administrator to whom the faculty member immediately reports, if this is not the chairperson, and to the dean, and he/she shall include a copy of the letter in the promotion dossier."

18. On May 25, 2021, Dr. Bruce sent a letter to Philip Oldham, the President of TTU, in which she wrote that she had reviewed the Plaintiff's promotion dossier and was not in agreement with the recommendations of the Plaintiff's peers, chair, or dean. Dr. Bruce recommended to Dr. Oldham that the Plaintiff not be awarded a promotion to the rank of Professor.

19. Dr. Bruce's May 25, 2021, letter did not contain justifiable reasons for her disagreement with the prior recommendations. Instead, Dr. Bruce quoted verbatim the three requirements for promotion to the rank of Professor and summarily concluded that "there is not adequate documented evidence to satisfy these criteria."

20. Dr. Bruce made general recommendations to the Plaintiff to improve her teaching, scholarship, and collegiality but offered no clarity or specificity on any alleged deficiencies. Dr. Bruce suggested the Plaintiff might attain a promotion only after publishing her manuscripts which were in progress at that time, including one book and two refereed journal articles.

21. Contrary to TTU policy, Dr. Bruce did not write a letter to the Plaintiff's unit peers, to the Plaintiff, to the unit chairperson, or to the dean explaining the reasons for her disagreement. No such letter was included in the Plaintiff's promotion dossier.

22. The same day Dr. Bruce prepared her letter to Dr. Oldham recommending the Plaintiff's promotion be denied, Dr. Oldham also prepared a letter in which he wrote that he was not in agreement with the recommendations of the Plaintiff's peers, chair, or dean. Instead, Dr. Oldham concurred with Dr. Bruce that the Plaintiff should not be promoted to Professor. Dr. Oldham provided no explanation for his decision.

23. In response to the promotion denial, the Plaintiff filed a grievance with the Faculty Affairs Committee, which was a committee of the Faculty Senate.

24. On August 20, 2021, the Faculty Affairs Committee sent correspondence to Dr. Oldham detailing the policy violations and inadequacies in Dr. Bruce's May 25, 2021, letter recommending a promotion denial. The Committee concluded Dr. Bruce did not provide justifiable reasons for rejecting the recommendations of the Plaintiff's peers, chair, and dean. The Committee unanimously voted to recommend that Dr. Oldham overturn the Provost's denial of full professorship.

25. On September 16, 2021, Dr. Oldham rejected the Faculty Affairs Committee's recommendation that he overturn Dr. Bruce's promotion decision. In his letter denying the Plaintiff's promotion, Dr. Oldham offered one reason for his rejection of the Plaintiff's promotion: "I find that your current level of peer reviewed published scholarship is insufficient for promotion to professor at this time."

26. Dr. Bruce and Dr. Oldham imposed on the Plaintiff a publication requirement that was in excess of the department's requirements for promotion to Professor. Their excessive publication requirement was discriminatory in that it was applied only to the Plaintiff, a female, but not to other similarly situated male associate professors.

27. Before and after the Plaintiff's promotion denial, TTU promoted men to Professor with fewer or an equal number of peer-reviewed publications as the Plaintiff. In the English department where the Plaintiff worked, TTU announced the promotion of a male associate professor to Professor in March of 2022—the year after it denied the Plaintiff's promotion. The promoted man had published two peer-reviewed journal articles as an associate professor, just as the Plaintiff had, but his overall amount of published scholarship was less than that of the Plaintiff.

28. The Plaintiff filed a timely complaint of sex discrimination against TTU with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a letter dated April 6, 2022, notifying the Plaintiff of her right to sue. **[Exhibit 1].**

29. The attitude of Dr. Oldham towards the Plaintiff in singling out the Plaintiff for treatment that differed from TTU's standards for promotion and that differed from TTU's treatment of similarly situated male associate professors is evidence of the discrimination against the Plaintiff in violation of her rights under 42 U.S.C. §2000e *et. seq* and THRA.

30. TTU knew or should have known of the discriminatory acts by Dr. Oldham but did nothing to stop, prevent, or cure those acts. On the contrary, TTU not only acquiesced in the conduct but facilitated and affirmed that conduct.

## CAUSE OF ACTION

31. The Plaintiff is a female and a member of a protected class under Title VII and THRA.

32. The Plaintiff was qualified for the position of Professor.

33. The Plaintiff was subjected to discriminatory and disparate treatment because of her sex.

34. TTU discriminated against the Plaintiff because of her female sex by denying her a promotion to Professor while promoting similarly situated or less qualified men for that position.

35. TTU discriminated against the Plaintiff by imposing a heightened publication requirement which was not applied to similarly situated male associate professors and by relying on that requirement to deny the Plaintiff's promotion.

36. TTU discriminated against the Plaintiff by failing to follow its own promotion policies and guidelines when it rejected the promotion recommendations of the Plaintiff's peers, chair, and dean.

37. The Plaintiff's sex was a motivating factor in TTU's denial of the Plaintiff's promotion.

38. TTU's sex discrimination against the Plaintiff was committed maliciously, willfully, and with reckless disregard for the rights of the Plaintiff.

39. TTU is vicariously liable for the actions of its management and supervisors, including the actions of Dr. Oldham and Dr. Bruce.

40. The Plaintiff has fulfilled all administrative prerequisites and conditions precedent to the institution of this action.

41. The Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein, and this suit for backpay, declaratory judgment, injunctive relief, and compensatory damages is her only means of securing adequate relief.

42. As a direct and proximate result of the discriminatory actions of TTU, the Plaintiff is now suffering and will continue to suffer irreparable injury from the unlawful conduct alleged herein unless enjoined by this Court.

43. As a direct and proximate result of the discriminatory actions of TTU, the Plaintiff has been, is being, and will be in the future deprived of income in the form of wages and of prospective benefits solely because of TTU's conduct.

44. As a direct and proximate result of the discriminatory actions of TTU, the Plaintiff has been, is being, and will be in the future harmed by damage to her reputation as a member of

the TTU faculty and more broadly in the academic community due to TTU's wrongful denial to her of the promotion for which she was qualified and recommended by her peers, chair, and dean.

Premises considered, the Plaintiff prays:

1. That process issue and be served upon TTU requiring it to answer;

2. That this case be set for trial and that a jury be empaneled to hear and decide the merits and damages;

3. That the Plaintiff be granted a declaratory judgment finding the employment policies, practices, procedures, conditions and customs of TTU as applied to the Plaintiff were in violation of the Plaintiff's rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq* and THRA.

4. That the Plaintiff be granted a permanent injunction enjoining TTU, its agents, successors, employees, and those acting in concert with TTU or at TTU's request, from continuing to violate the Plaintiff's rights.

5. That the Plaintiff be granted a judgment against TTU for the full amount of pay and employee benefits, together with prejudgment interest, that the Plaintiff lost as a result of TTU's unlawful failure to promote the Plaintiff;

6. That the Plaintiff be granted a judgment on her claim of discrimination and awarded compensatory damages;

7. That TTU be ordered to promote the Plaintiff into the position of professor she would have had, at the appropriate pay, absent the discriminatory denial of promotion;

8. That the Plaintiff be awarded her costs including reasonable attorneys' fees; and

9. For such further and general relief as the equities of this cause may require and the Court may deem just and proper.

/s/ C. Joseph Hubbard
Richard L. Colbert, #9397
C. Joseph Hubbard, #29226
KAY GRIFFIN PLLC
222 2nd Ave. N., Suite 340-M
Nashville, TN 37201
(615) 742-4800
rcolbert@kaygriffin.com
joseph.hubbard@kaygriffin.com

*Attorneys for Plaintiff Kristen Deiter*