UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **KRISTEN DEITER,** | ) | |
| | ) | |
| Plaintiff, | ) | JURY DEMAND |
| | ) | |
| v. | ) | No: 2:22-cv-00030 |
| | ) | |
| **TENNESSEE TECHNOLOGICAL UNIVERSITY,** | ) ) | Chief Judge Waverly D. Crenshaw, Jr. Magistrate Judge Alistair E. Newbern |
| | ) | |
| Defendant. | ) | |

___

**DEFENDANT TENNESSEE TECHNOLOGICAL UNIVERSITY'S STATEMENT OF UNDISPUTED MATERIAL FACT**
___

Defendant, Tennessee Technological University (TTU), by and through the Office of the Attorney General and Reporter, submits this Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment.

1. Dr. Deiter began working as an Assistant Professor at TTU on August 1, 2011, in the English Department. (Doc. 13, Amend. Comp., ¶ 4; Deiter Dep., Ex. 2, CV at 1.)

**Response:**

2. Dr. Deiter was promoted to Associate Professor in August 2016 and attained tenure in 2017. (Doc. 13, Amend. Comp., ¶ 4; Deiter Dep. Ex. 2.)

**Response:**

3. Dr. Deiter is currently a tenured Associate Professor of English at TTU. (Doc. 13, Amend. Comp., ¶ 4.)

**Response:**

4. Dr. Deiter identifies her sex as female. (Doc. 13, Amend. Comp., ¶ 4.)

1

**Response:**

**Promotion Process at TTU**

5. Faculty promotions in rank at TTU during the period 2020 to 2021 were governed by TTU Policy 206. (Oldham Dep. 33:22-34:11, 35:17-21; Oldham Dep. Ex. 5.)

**Response:**

6. TTU Policy 206 provides TTU's statement and policy regarding high-level expectations for promotion, the faculty, and rank. (Oldham Dep. 33:22-34:11, 35:17-21, Ex. 5.)

**Response:**

7. The President (or his/her designee) has the final authority on interpreting the terms of the policy. (Oldham Dep. 34:12-19; 35:5-9; Policy 206, p. 12, Section IX.)

**Response:**

8. The factors considered in promotion in rank are teaching, research and scholarship, and service. (Oldham Dep. 23:21-24:4; Oldham Dep. Ex. 5.)

**Response:**

9. Full Professor is the highest academic rank for faculty. (Oldham Dep. Ex. 5 at 6.)

**Response:**

10. Professorship is "not a reward for longevity" but "recognition of superior achievement within the discipline with every expectation of continuing contribution to Tennessee Tech and the larger academic community." (Oldham Dep. Ex. 5 at 6.) And requires "[d]ocumented evidence of sustained high quality professional productivity and national recognition." (Oldham Dep. Ex. 5 at 6.)

**Response:**

11. When an Associate Professor applies for promotion to Full Professor, the faculty member's

application (a.k.a. "dossier") is reviewed by the department peers (including committee chair), Department Chair, Dean of the College (for the department), the Provost, and the President of the University. (Oldham Dep 50:6-52:1, 14:21, 54:4-8, 58:22-59:5.)

**Response:**

12. As the faculty member's dossier moves forward through each level of review, the reviewing group/individual adds their recommendation (and/or vote) and comments to the faculty member's dossier for final review and determination by TTU's President. (Oldham Dep. 50:6-52:1, 14-21; 54:4-8, 58:22-59:5.)

**Response:**

13. President Oldham is the ultimate decision maker on applications for promotion. (Oldham Dep. 46:4-13.)

**Response:**

14. President Oldham reviews each dossier submitted for promotion and specifically, he looks to the recommendation letters in the dossier, including the external letters of support, the information provided by the applicant in terms of what they consider their most notable achievements to be, and the department peer's comments and recommendations. (Oldham Dep. 46:4-13; 108:2-15; 107:17-24.)

**Response:**

15. If there is a split vote (or ambiguity) in the recommendations below his review, President Oldham reviews and determines the basis for both the majority and minority opinions, starting with the peer review, vote, and comments. (Oldham Dep. 108:16-24.)

**Response:**

16. President Oldham does not speak with the faculty member/applicant, nor does he speak

3

with any reviewer other than the Provost. (Oldham Dep. 70:24-71:11.)

**Response:**

17.  President Oldham speaks to Provost Bruce generally about any decisions that are problematic, difficult, present ambiguity in the opinions throughout the process, and certainly any negative decision. (Oldham Dep. 65:14-21; 71:7-11.)

**Response:**

18.  President Oldham uses the information from his review process to make an independent decision as to whether a faculty member should be promoted. (Oldham Dep. 108:21-109:4.)

**Response:**

19.  When the President makes his decision, he memorializes it in a letter to the faculty member. (Oldham Dep. Ex. 13.)

**Response:**

20.  If the faculty member is dissatisfied with a decision regarding his/her promotion at any time in the process, the faculty member can file a grievance with the Faculty Affairs Committee. (Oldham Dep. Ex. 5.)

**Response:**

21.  The President can accept or reject the Faculty Affairs Committee's recommendation. (Oldham Dep. Ex. 5.)

**Response:**

**Dr. Deiter's Application for Promotion in Rank to Full Professor (2020-2021)**

22.  Dr. Deiter applied for a promotion in rank to Full Professor in Fall 2020. (Doc. 13, ¶ 6; Deiter Dep. 35:22-24; Bruce Dep. Ex. 7.)

**Response:**

23. Dr. Deiter's application was subject to the English Department's tenure and promotion policy at the department level as well as Policy 206. (Oldham Dep. Ex. 5; Null Dep. 25:2-24.)

**Response:**

24. Dr. Deiter was one of two professors applying for promotion in rank in the English Department in 2020, but the only one to apply for promotion in rank from Associate to Full Professor. (Bruce Dep. Ex. 7, p.1.)

**Response:**

25. In 2020 Dr. Deiter was the only faculty member at TTU to apply for promotion in rank and receive a split vote (versus a unanimous vote) prior to the President's review of the faculty member's dossier. (Bruce Dep. Ex. 7, p.1.)

**Response:**

26. On November 11, 2020, the English Department voted six to two to recommend Dr. Deiter for promotion from Associate to Full Professor. (Oldham Dep., Ex. 4.)

**Response:**

27. Dr. Deiter's peers' Promotion Vote Summary provided the following comments regarding her publications:

Research/Scholarship/Creativity section:

Comments: she is very meticulous in scholarship and has won the respect of other international authorities in her field. Journals she published in are top-notch.

While Dr. Dieter has published two articles and a book review since 2016, she received a total of eleven course releases specifically designated for research during [this] time. Her publications are insufficient for promotion to Full Professor. She will have a stronger case for promotion when her manuscripts that are currently under consideration (a book and two articles) are published.

Service/Outreach section:

Other comments: insufficient publication

5

(Oldham Dep. Ex. 4.)

**Response:**

28. On December 21, 2020, Dr. Deiter's Interim Department Chair recommended her for promotion to Dean Semmes. (Oldham Dep. Ex. 10.)

**Response:**

29. On May 20, 2021, Dean Semmes recommended Dr. Deiter for promotion to Provost Bruce. (Oldham Dep. Ex. 11.)

**Response:**

30. On May 25, 2021, Provost Bruce recommended to President Oldham that Dr. Deiter not be promoted. (Oldham Dep. Ex. 12.)

**Response:**

31. When President Oldham received Dr. Deiter's dossier, it was a split vote recommendation. (Bruce Dep. Ex. 7.)

**Response:**

32. President Oldham reviewed the minority opinions in his review of Dr. Deiter's dossier for promotion. (Oldham Dep. 46:4-47:21, 70-73.)

**Response:**

33. President Oldham did not speak with any of the reviewers of Dr. Deiter's dossier, about her dossier, except for Provost Bruce. (Oldham Dep. 70:24-71:20.)

**Response:**

34. President Oldham spoke to Provost Bruce because of his concern about Dr. Deiter's scholarship. (Oldham Dep. 70:24-71:20.)

**Response:**

35. President Oldham's concern about Dr. Deiter's scholarship productivity was that it was limited in that even if the 2016 publication was counted, he believed that her publications were "pretty spread out" and "not a lot to go on", given that her only other significant publication was in 2020 and she had a book review. (Oldham Dep. 71:21-72:4.)

**Response:**

36. President Oldham looked for consistency of record where there was not a substantial gap in the publication record. He believed that over a five-year period, Dr. Deiter's publication record was episodic and did not build a strong case for promotion. (Oldham Dep. 102:16-106:5.)

**Response:**

37. President Oldham believed his conversation with Provost Bruce about Dr. Deiter's dossier focused on her scholarly level of work, particularly the quantity and frequency of work. (Oldham Dep. 65:22-66:4.)

**Response:**

38. President Oldham also looked at the minority recommendations at the peer department level, which reflected concerns about Dr. Deiter's lack of scholarship publications since 2016 (only two and a book review), especially since Dr. Deiter had received eleven course releases during these five academic years (10 semesters) to focus on research. (Oldham Dep. Ex. 4.)

**Response:**

39. President Oldham believed that Dr. Deiter met his expectations for promotion in the service and outreach category and that her teaching was sufficient for promotion. (Oldham Dep. 67:14-18-68:11-16.)

**Response:**

40. President Oldham notified Dr. Deiter that he would not recommend her for promotion and

denied her promotion request on May 25, 2021. (Oldham Dep. Ex. 13.)

**Response:**

41. Dr. Deiter filed an internal grievance with the Faculty Affairs Committee. (Doc. 13, Amend. Comp., ¶23.)

**Response:**

42. President Oldham rejected the recommendation from Dr. Deiter's internal grievance appeal. (Oldham Dep. Ex. 16.)

**Response:**

**Dr. Deiter's EEOC Complaint of Discrimination**

43. Dr. Deiter filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on April 1, 2022, alleging discrimination on the basis of sex when she was "denied a promotion to a Professor position." (Deiter Dep., Ex. 1, p. 21.)

**Response:**

44. Dr. Deiter describes herself as "Female" on the EEOC charge. (Deiter Dep., Ex. 1, p. 21.)

**Response:**

45. Dr. Deiter believes that she experienced discrimination when she was denied her promotion and males who had fewer achievements than she had were promoted. (Deiter Dep, 10:4-15.)

**Response:**

46. Dr. Deiter's EEOC right to sue letter was issued on April 6, 2022. (EEOC Right to Sue letter, dated April 6, 2022, Doc. 1-1.)

**Response:**

47. Dr. Deiter filed suit against TTU on July 5, 2022. (Complaint, Doc. 1.)

**Response:**

8

**Dr. Deiter's Alleged Comparators**

48. Dr. Deiter has identified two faculty members that she believes were treated more favorably than she based on sex – Brian Williams and Mark Loftis. Dr. Deiter describes both Dr. Williams and Dr. Loftis as "males." (Deiter Dep. 10:4-22.)

**Response:**

49. Dr. Williams applied for promotion in the fall semester of 2021 and was promoted from Associate to Full Professor in spring of 2022 in the English Department (effective August 2022). (Bruce Dep. Ex. 7; Williams Dep. 32:20-33:1.)

**Response:**

50. Dr. Loftis applied for promotion in the fall semester of 2021 and was promoted from Associate to Full Professor in spring of 2022 in the Department of Counseling and Psychology (effective August 2022). (Bruce Dep. Ex. 7; Loftis Dep. 9:23-25.)

**Response:**

51. Dr. Williams was supported by the English Department (4 out of 7 votes to promote), the Chair of the English Department (Interim Chair Dr. Null), the Dean (Dean Jeff Roberts), and the Provost (Dr. Bruce) when he applied for promotion. (Bruce Dep. Ex. 7; Williams Dep. 43:14-44:1, 44:5-8.)

**Response:**

52. Dr. Deiter did not receive support from the Provost in her promotion application for Full Professor, in part, because of her scholarship record. (Bruce Dep. Ex. 7.)

**Response:**

53. Dr. Loftis was supported by the Department of Counseling and Psychology (5 votes out of 5 to promote), the Chair of the Counseling and Psychology Department (Interim Chair Dr.

9

Stephanie Kazanas), and the Dean of the College of Education, but not the Provost (Dr. Bruce) when he applied for promotion. (Bruce Dep. Ex. 7; Loftis Dep. 10:8-11, 18:7-12, 24:1-10.)

**Response:**

54. Dr. Williams' peer recommendations regarding his scholarship and other areas of consideration (teaching and service) noted among other comments that he: has a clear and consistent research agenda, is a leading thinker in his subfield of American fiction during the wars in Iraq and Afghanistan, as a critic of living writers creating recent literature, he is helping mold the literary future, is a leader in promoting trauma studies (the leading school of thought among grad students), received high evaluations and puts great effort into developing useful courses for TTU students, has participated in more recent Master theses than anyone in the program, has had as much influence on the literature's modernization (diversity and theoretical sophistication) as any member of the department, has gone above and beyond the call of duty regarding service (a model for all faculty), has been the best Director of Graduate Studies ever seen in the department, has stewarded countless improvements in the department programs, and should have more than two publications with eight course releases for research. (Williams Dep. Ex. 5.)

**Response:**

55. Dr. Loftis' department did not have a set of written criteria for promotions. (Loftis Dep. 28:23-25.)

**Response:**

56. Dr. Loftis developed a PhD program for his Department, which was approved in 2019 and began its first cohort in 2020. (Loftis Dep. 19:13-21:18.)

**Response:**

57. Dr. Loftis had one hundred percent support from five peers and four external letters of

support within his dossier up to the point of review by the Provost. (Loftis Dep. 24:11-25:20; Bruce Dep. Ex.7.)

**Response:**

58. Dr. Deiter did not have unanimous support among her peers for promotion, but each level of review recommended her for promotion prior to the Provost. (Bruce Dep. Ex. 7.)

**Response:**

59. Dr. Loftis believed the Provost's letter to him that she would not recommend him for promotion referenced teaching more undergraduate courses and scholarship. (Loftis Dep. 29:13-30:25.)

**Response:**

60. After Dr. Loftis was not recommended for promotion by the Provost, he decided not to file a grievance. (Loftis Dep. 32:16-33:1.)

**Response:**

61. Dr. Loftis was ultimately recommended for promotion by President Oldham in June 2022. (Loftis Dep. 25:21-26:5.)

**Response:**

62. Dr. Loftis believes the President referenced his contributions to TTU and his years of service in President Oldham's letter recommending him for promotion. (Loftis Dep. 35:8-12.)

**Response:**

Respectfully Submitted,

**JONATHAN SKRMETTI**
**Attorney General and Reporter**

s/ *Ryan Nicole Henry*
Ryan Nicole Henry, BPR # 040028
Assistant Attorney General
Administrative Law Division
E. Ashley Carter, BPR # 027903
Senior Assistant Attorney General
Employment Division
Post Office Box 20207
Nashville, Tennessee 37202-0207
(615) 532-2935
ryan.henry@ag.tn.gov
ashley.carter@ag.tn.gov

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

       I hereby certify that a true and exact copy of the foregoing TTU's Statement of Undisputed Material Facts has been served via the Court's electronic filing system this 28th day of June, 2024, upon counsel of record:

Richard L. Colbert
THOMPSON BURTON PLLC
One Franklin Park
6100 Tower Circle, Suite 200
Franklin, Tennessee 37067
rcolbert@thompsonburton.com

s/ *Ryan Nicole Henry*
Ryan Nicole Henry