UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| KRISTEN DEITER, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) No. 2:22-cv-00030 |
| TENNESSEE TECHNOLOGICAL UNIVERSITY, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Dr. Kristen Deiter's Motion for Entry of Judgment under Federal Rules of Civil Procedure 54 and 58. (See Doc. Nos. 126, 127). Defendant Tennessee Technological University ("TTU") filed a response in opposition (Doc. No. 128), and Dr. Deiter replied (Doc. No. 129). For the following reasons, Dr. Deiter's Motion will be granted.

**I.  BACKGROUND**

Following a four-day trial, the jury returned a unanimous verdict finding that TTU discriminated against Dr. Deiter because of her sex—and therefore violated Title VII—when President Oldham denied her application for promotion in rank from Associate Professor to Full Professor. (Doc. Nos. 120, 125). Although the jury found TTU liable for discrimination, it determined that Dr. Deiter was not entitled to recover any compensatory damages. (See Doc. Nos. 120, 125). The Court reserved decision on Dr. Deiter's requests for equitable relief until after trial.

Dr. Deiter now asks the Court to enter a judgment ordering TTU to: (1) promote her to the rank of full Professor effective immediately, with the commensurate annual salary increase of

$10,000; and (2) pay her back pay.[1]  The Court will address these issues separately below.

II.     **PROMOTION TO FULL PROFESSOR**

Dr. Deiter argues that she is entitled to the equitable remedy of promotion to Full Professor. (Doc. No. 127 at 1–2).  Title VII gives district courts wide discretion to award equitable relief to victims of sex-based discrimination, with the ultimate goal of providing the victim "*the most complete relief possible*."  See McClellan v. Midwest Machining, Inc., 900 F.3d 297, 308 n.1 (6th Cir. 2018) (citations omitted); 42 U.S.C. §2000e-5(g).  The purpose of equitable relief under Title VII is "to make the victims of unlawful discrimination whole by restoring them, so far as possible . . . to a position where they would have been were it not for the unlawful discrimination."  Ford Motor Co. v. EEOC, 458 U.S. 219, 230 (1982) (internal quotation marks and alterations omitted) (quoting Albemarle Paper Co. v. Moody, 422 U.S. 405, 421 (1975)).  "There can be no dispute that the Court has the discretion to order promotions . . . as a remedy to make Plaintiffs whole." Howe v. Akron, 2011 WL 2931548, at *2–*3 (N.D. Ohio July 18, 2011) (citing 42 U.S.C. § 2000e-5(g)) ("The principles of reinstatement apply equally to the remedy of promotion.").

As an initial matter, TTU argues that the jury's verdict did not answer the question of "[w]hether Dr. Deiter was qualified for promotion when she applied in 2020[.]"  (Doc. No. 128 at 2).  That is not true.  The jury found that TTU denied Dr. Deiter's application for promotion to Full Professor because she is female.  In doing so, the jury explicitly rejected TTU's argument and proof at trial that Dr. Deiter would have been denied the promotion even if she were a male.  The jury could not have reached that result unless it found that Dr. Deiter was otherwise qualified for the position of Full Professor when she applied in 2020.  TTU cannot now relitigate that issue here.

Where, as here, "an employee is denied a promotion because of [sex], the only way to make

---

[1] Dr. Deiter indicates that she will file a motion for attorneys' fees within thirty days of this Order. (Doc. No. 126 at 1 n.1).

that employee completely whole is to appoint her to the position that she was denied." Tompkins v. Darr, 2013 WL 6198209, at *3 (M.D. Ga. Nov. 27, 2013) (citation omitted); see also 42 U.S.C. §2000e-5(g) (providing that the Court may order "reinstatement or hiring of employees"). Sometimes there may be "exceptional circumstances" that would prevent the Court from ordering a promotion for equitable or practical reasons, but none of those circumstances exist here. See Suggs v. ServiceMaster Educ. Food Mgmt., 72 F.3d 1228, 1233 (6th Cir. 1996) (citation omitted). For example, Dr. Deiter has continued to work for TTU since 2011, and presumably she will continue to have a "satisfactory employment relationship" when she is a Full Professor. See id. Similarly, Dr. Deiter already attained tenure in 2017, so ordering her promotion would not entangle the Court in TTU's sensitive tenure decisions—matters the Sixth Circuit held are "best left to academic professionals." See Gutzwiller v. Fenik, 860 F.2d 1317, 1333 (6th Cir. 1988); Ford v. Nicks, 866 F.2d 865, 875 (6th Cir. 1989) (noting that "federal courts have traditionally been wary of interfering with academic tenure decisions"); see also Jew v. University of Iowa, 749 F. Supp. 946, 962 (S.D. Iowa 1990) ("Dr. Jew is a tenured Associate Professor, so the 'intrusiveness' of the remedy of ordering promotion to full professor is far less than ordering a grant of tenure."). And, as Dr. Deiter notes in her motion, her promotion would not displace anyone because there is no limit to the number of faculty members who can be promoted to Full Professor. (See Doc. No. 127 at 2). It therefore appears that the "most complete relief possible" for Dr. Deiter includes her retroactive promotion. See McClellan, 900 F.3d at 308 n.1.

For these reasons, the Court will require TTU to promote Dr. Deiter to the position of Full Professor effective August 1, 2021.

### III. BACK PAY

#### A. Calculation of Back Pay

Dr. Deiter also seeks back pay for the compensation she would have earned if TTU had not

3

Case 2:22-cv-00030   Document 130   Filed 02/08/25   Page 3 of 12 PageID #: 1995

unlawfully denied her promotion application. (Doc. No. 127 at 3–6). "Backpay is presumptively favored as a make-whole remedy and, absent exceptional circumstances, should be awarded to successful employment discrimination plaintiffs." Gutzwiller v. Fenik, 860 F.2d 1317, 1333 (6th Cir. 1988) (citation omitted); Szeinback v. Ohio State Univ., 820 F.3d 814, 821 (6th Cir. 2016). "The plaintiff in a Title VII case" bears the burden to: (i) "prove her entitlement to back pay," and (ii) "establish the appropriate amount with reasonable certainty." Id. (citing McMahon v. Libbey-Owens-Ford Co., 870 F.2d 1073, 1079 (6th Cir. 1989)).

The Court finds that Dr. Deiter is entitled to back pay because she proved that she would have made more money as a Full Professor than she did in her current role as an Associate Professor. Thus, to calculate the appropriate amount of back pay in this case, the Court must measure the difference between the amount that Dr. Deiter actually earned while being discriminated against as an Associate Professor, and the amount she would have earned if no discrimination occurred and she became a Full Professor in August 2021. Szeinback, 820 F.3d at 821. In making this calculation, the Court should consider "the salary and any raises that [Dr. Deiter] would have received, 'as well as sick leave, vacation pay, pension benefits and other fringe benefits she would have received but for discrimination.'" Id. (quoting Howe, 801 F.3d at 744).

Unsurprisingly, the parties dispute whether Dr. Deiter proved the appropriate amount of her back pay with reasonable certainty. Dr. Deiter testified at trial that during the 2021-2022 school year, she would have made $7,500.00 more as a Full Professor than she did as an Associate Professor. (Doc. No. 127 at 3). She further testified that this $7,500.00 difference increased to $10,000.00 during the 2022-2023 academic year, and that it remained $10,000 each year since then. (Id.). Dr. Deiter also explained that she participated in an optional retirement plan to which TTU contributed ten percent of her salary annually, so any award of backpay should include

4

retroactive contributions to her retirement plan based on the salary she should have earned as a Full Professor during that time. (Id. at 5). Based on this proof, Dr. Deiter contends she is entitled to back pay in the amount of: (i) $7,500.00 for the 2021-2022 academic year; (ii) $10,000.00 for the 2022-2023 academic year; (iii) $10,000.00 for the 2022-2023 academic year; (iv) $10,000.00 for the 2024-2025 academic year, prorated from August 1, 2024 until present (i.e. $5,833.00); and (v) the additional ten percent optional retirement plan contributions she would have earned based on the above salary increases. (Id. at 5–6).

TTU responds with two arguments opposing these amounts. First, TTU contends that Dr. Deiter should not get *any* back pay because her testimony about the amount she would have received from 2022 onward "is based on pure speculation." (Doc. No. 128 at 3). Although "back pay in a Title VII case need not be proven with the exactitude of lost profits in a breach of contract case, neither can such an award be appropriately founded on mere speculation." Christopher v. Stouder Mem. Hosp., 936 F.2d 870, 880 (6th Cir. 1991). Of course, calculating back pay "almost always involves ambiguity and requires some measure of speculation." Lovely v. Aubry, 24 F. App'x 337, 340 (6th Cir. 2001) (internal quotation marks omitted). Thus, it is well settled that "[b]ack pay should be awarded even where the precise amount of the award cannot be determined," and "[a]ny ambiguity in what the claimant would have received but for discrimination should be resolved against the discriminating employer." Hance v. Norfolk S. Ry. Co., 571 F.3d 511, 520 (6th Cir. 2009) (citation omitted).

Here, the Court finds that Dr. Deiter's testimony about what she would have earned as a Full Professor is both credible and sufficient to award back pay. Dr. Deiter has been a professor at TTU for more than a decade, has been a tenured professor for more than half a decade, and has personal knowledge about the salary differences between an Associate Professor and Full

Professor. Moreover, Dr. Deiter's proof of damages is not impermissibly arbitrary, "sketchy," "inconclusive," or ambiguous, see Christopher, 936 F.2d at 880, because even TTU acknowledges in its brief that: (i) "President Oldham confirmed those figures," and (ii) "had [Dr. Deiter] been promoted to Full Professor in August 2021, she would have received a $7,500.00 pay increase." (Doc. No. 128 at 3–4). Accordingly, the Court finds that Dr. Deiter's requested back pay amount is not based on pure speculation. See United States v. Warren, 138 F.3d 1083, 1097–98 (6th Cir. 1998) (refusing to reverse district court's award of back pay based solely on plaintiff's testimony).

Second, TTU contends that Dr. Deiter would not have received a flat $10,000.00 each year from 2022 to 2025, but rather would have received an annual merit-based salary increase of only 3.5%. (Doc. No. 128 at 4). The trial record does not contain any evidence or testimony about these merit-based increases, and TTU's sole support for this argument comes from a "salary chart" and "Declaration of Kevin Vedder" that TTU did not attach to its brief. (Id.). Without these documents or any contradictory testimony in the record, the Court sees no reason to reject Dr. Deiter's sworn, undisputed testimony on this issue. As a result, the Court finds with reasonable certainty that Dr. Deiter would have received an additional $7,500.00 for the 2021-2022 academic year, and an additional $10,000.00 each subsequent year as a Full Professor.

For these reasons, Dr. Deiter is entitled to $32,833.00 in back pay salary and an additional $3,283.30 in back pay retirement plan contributions.

B.  Mitigation

The Court next considers whether it should reduce Dr. Deiter's back pay award for failing to mitigate her damages. Title VII itself provides that "[i]nterim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." 42 U.S.C. § 2000e–5(g). "Courts have long held that this provision can affect a successful plaintiff in two ways: the backpay award of a plaintiff who has

been employed during the pendency of [her] claims is reduced by the amount [she] earned; and a plaintiff who did not attempt to mitigate [her] damages by 'us[ing] reasonable diligence in finding other suitable employment . . . [f]orfeits [her] right to backpay.'" United States v. New York, 847 F. Supp. 2d 395, 427 (E.D.N.Y. 2012) (quoting Ford Motor Co., 458 U.S. at 231–32).

TTU bears the burden of proving that Dr. Deiter failed to mitigate her damages. Taylor v. Invacare Corp., 64 F. App'x 516, 523 (6th Cir. 2003). "To do so [TTU] must establish that there were substantially equivalent positions which were available to [Dr. Deiter] and that [Dr. Deiter] failed to use reasonable care and diligence in seeking such positions." Hood v. Tenn. Bd. of Regents, 2006 WL 2645197, at *14 (M.D. Tenn. Sept. 14, 2006) (citing Rasimas v. Mich. Dep't of Mental Health, 714 F.2d 614, 624 (6th Cir. 1983)).

TTU does not explicitly argue in its opposition brief whether Dr. Deiter failed to mitigate her back pay damages.[2] Instead, TTU contends that the back pay period should not extend past August 2023 because if Dr. Deiter had applied for Full Professor starting in August 2023, she likely would have received the promotion because that is when her book finally was placed under contract for publishing. (Doc. No. 128 at 3). This argument relates to TTU's trial theory that it denied Dr. Deiter the promotion in 2021 because she had not yet published enough scholarly work. But as the jury found, Dr. Deiter was qualified for the promotion when she applied in 2021. So even if Dr. Deiter had an obligation to reapply for the promotion to Full Professor in subsequent years,[3] the Court does not find by a preponderance of the evidence TTU would have promoted her

---

[2] TTU previously suggested in a pretrial brief, (see Doc. No. 98 at 2), and during the pretrial conference, that it would raise the defense of failure to mitigate damages if it applied.

[3] Dr. Deiter argues that it would be unreasonable to require her to reapply for a promotion she did not receive because of unlawful discrimination. (Doc. No. 127 at 4). But because TTU did not meet its initial burden, the Court need not address whether it would have been reasonable for her

just because she published a book. Dr. Deiter's sex was a motivating factor in TTU's decision to deny her a promotion in 2021, and TTU simply has not met its burden to prove that things would be different in 2023. For these reasons, the Court will not reduce Dr. Deiter's back pay award for a failure to mitigate damages.

C. Prejudgment Interest

Last, the Court must consider Dr. Deiter's request for prejudgment interest on her back pay award. "Prejudgment interest serves to compensate for the loss of use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress." West Virginia v. United States, 479 U.S. 305, 311 n.2 (1987). "[A]n award of prejudgment interest on the back pay owed is also nearly always appropriate" in Title VII cases. Pittington v. Great Smoky Mountain Lumberjack Feud, LLC, 880 F.3d 791, 795 (6th Cir. 2018); see also EEOC v. Ky. State Police Dep't, 80 F.3d 1086, 1098 (6th Cir. 1996) (citation omitted) (noting that "it is ordinarily an abuse of discretion *not* to include pre-judgment interest in a back-pay award").

"In federal question cases, absent statutory directive, the rate of prejudgment interest is left to the Court's discretion." Orshan v. Macchiarola, 629 F. Supp. 1014, 1017 (E.D.N.Y. 1986) (citation omitted); see also Butz v. Campbell, 2019 WL 1980701, at *9 (W.D. Ky. May 3, 2019) (citing Ford v. Uniroyal Pension Plan, 154 F.3d 613, 619 (6th Cir. 1998)). The Sixth Circuit has "upheld awards of pre-judgment interest that were tied to prevailing market rates, thus reflecting what the defendant[] would have had to pay in order to borrow the money at issue" See Rybarczyk v. TRW, Inc., 235 F.3d 975, 986 (6th Cir. 2000). One way to tie an award of prejudgment interest to prevailing market rates is to use the rate provided in 28 U.S.C. § 1961(a), which "is the one-

---

to reapply for the promotion, or whether it would have been the type of "heroic" effort the Sixth Circuit held is unnecessary for mitigation. See Ford, 866 F.2d at 873.

year Treasury rate for the week that precedes a court's final judgment." Schumacher v. AK Steel Corp. Ret. Accumulation Pension Plan, 711 F.3d 675, 686 (6th Cir. 2013). The Court may calculate prejudgment interest using the rate in § 1961(a), but only if the Court first determines that the statutory rate is "fair." Pittington, 880 F.3d at 807; see also Baptist Physician Hosp. Org., Inc. v. Humana Military Healthcare Servs., Inc., 481 F.3d 337, 354 (6th Cir. 2007) ("First and foremost, principles of equity guide trial courts in exercising their discretion to award prejudgment interest."). Courts consider several case-specific factors to determine whether the rate is fair, including Title VII's "remedial goal to place the plaintiff in the position that he or she would have occupied prior to the wrongdoing; the prevention of unjust enrichment on behalf of the wrongdoer; the lost interest value of money wrongly withheld; and the rate of inflation." Pittington, 880 F.3d at 807 (quoting Schumacher, 711 F.3d at 687).

The current prejudgment interest rate established by § 1961(a) is 4.18%.[4] Dr. Deiter argues, without record citations or legal support, that she should receive prejudgment interest at a rate higher than the statutory rate because of "the relatively high rate of inflation in recent years" and "the fact that she lost the investment return value of the added optional retirement plan contributions she would have received since August 2021." (Doc. No. 127 at 6). TTU responds that she "should be awarded no more than" the statutory rate to avoid giving her an "unfair windfall." (Doc. No. 128 at 4).

Neither party presented any evidence regarding TTU's potential borrowing costs or the rate of inflation during the operative time period, leaving the Court to calculate those figures on its own. The Court notes that prime rates have increased significantly over the last few years, with

---

[4] See Board of Governors of the Federal Reserve System, H.15 Selected Interest Rates (Feb. 6, 2025), available at https://www.federalreserve.gov/releases/h15/.

rates starting as low as 3.25% in August 2021, and increasing to 8.5% in August 2023 before dropping to the current rate of 7.5%.[5]  Thus, if TTU wanted to borrow money during the forty-two months between August 2021 and February 2025, it would have paid an average of 6.4% interest on a bank loan.[6]  For the inflation rate, the Court utilized the U.S. Bureau of Labor Statistics' Consumer Price Index Inflation Calculator[7] to calculate the buying power of one hundred dollars in August 2021 compared to the present.  That resulted in a rate of approximately 1.15%, meaning one hundred dollars in August 2021 would have the same buying power as one hundred fifteen dollars today.

At first glance, it appears that the statutory rate of 4.18% would result in an unfair windfall to TTU because it would end up paying Dr. Deiter more than 2% less than it "would have had to pay in order to borrow the money at issue."  See Rybarczyk, 235 F.3d at 986.  But the Court will not increase the prejudgment rate merely to punish TTU.  See EEOC v. Ky. State Police Dep't., 80 F.3d 1086, 1097–98 (6th Cir. 1996) ("Awards of prejudgment interest are compensatory, not punitive[.]").  What matters more is that the statutory rate would still accomplish the remedial goals of Title VII because it would compensate Dr. Deiter for the lost use of her money in an amount that exceeds the rate of inflation.  See Warren, 138 F.3d at 1096 (holding that the district

---

[5] See Federal Reserve Bank of St. Louis, Bank Prime Loan Rate (Feb. 6, 2025), available at https://fred.stlouisfed.org/series/DPRIME.

[6] To come up with this amount, the Court relied on the Federal Reserve Bank's prime rate chart and determined that the prime rate was approximately 3.25% between August 2021 and March 2022 (8 months); an average of 5.5% between April 2022 and July 2023 (16 months); 8.5% from August 2023 to September 2024 (13 months); and 7.5% from October 2024 to February 2025 (5 months).  The Court then calculated the weighted average of those rates during the relevant 42-month period using the following algebraic equation:  $42x = 8(0.325) + 16(0.55) + 13(0.85) + 5(0.75)$.  That equation reduced to $42x = 26.2$, and an x value of 0.639—or 6.4%.

[7] Available at https://www.bls.gov/data/inflation_calculator.htm.

court abused its discretion by awarding prejudgment interest that only compensated plaintiff for the rate of inflation). And given the potential that Dr. Deiter *may* have made less than $10,000.00 additional as a Full Professor based on TTU's (albeit unsupported) argument, the statutory rate strikes a balance between giving Dr. Deiter the money she would have actually earned without unfairly punishing (or enriching) TTU. As a result, and based on the limited information and arguments provided by the parties, the Court finds that the statutory rate of 4.18%, compounded annually,[8] is fair in light of the factors described in Pittington, 880 F.3d at 807, and Schumacher, 711 F.3d at 687.

The Court's final step in the analysis is to calculate the total amount of prejudgment interest by applying the 4.18% rate to Dr. Deiter's $36,616.30 back pay award.[9] This results in a total prejudgment interest award of $6,516.92.

## IV. CONCLUSION

For the foregoing reasons, Dr. Deiter's Motion for Entry of Judgment (Doc. No. 126) is **GRANTED**. The Court **ORDERS** TTU to promote Dr. Deiter to the rank of Full Professor retroactive to August 1, 2021; to adjust her pay grade and employee benefits accordingly; and to pay her $43,133.22 to compensate her for the amount she would have earned absent TTU's unlawful discrimination. The Clerk shall enter an amended judgment reflecting the Court's ruling.

---

[8] Although the Court has discretion to choose between compound or simple interest, the Sixth Circuit agrees that "[b]ack pay . . . should ordinarily include compound interest." Ky. State Police Dep't., 80 F.3d at 1098 (quoting Sands v. Runyon, 28 F.3d 1323, 1328 (2d Cir. 1994)).

[9] The Court used the following formula to calculate compound interest during the four academic years in question: Compound Interest = $36{,}616.30(1 + 0.0418)^4 - 36{,}616.30$.

IT IS SO ORDERED.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE